Filed 12/9/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| B.B., | D070894 |
| Petitioner, | (San Diego County Super. Ct. No. NJ11407B) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

PROCEEDINGS for extraordinary relief after reference to a Welfare and Institutions Code section 366.26 hearing. Michael Imhoff, Commissioner. Petition denied.

Dependency Legal Group of San Diego and Morgan D. Ross for Petitioner.

Thomas E. Montgomery, County Counsel, and Paula J. Roach, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Children's Legal Services of San Diego, Inc. and Julia Schooler for Minor.

No appearance for Respondent.

In 2013, the juvenile court terminated reunification services for B.B. (Father) and appointed minor H.B.'s maternal aunt as legal guardian. In 2016, the San Diego County Health and Human Services Agency (Agency) filed a new petition under Welfare and Institutions Code[1] section 300 and sought to terminate the guardianship. Father seeks writ review of the juvenile court's order terminating the guardianship and setting a section 366.26 hearing to determine a new permanent plan for H.B.[2]

Father contends the Agency erred when it filed a new section 300 petition instead of a petition under section 388 to terminate the guardianship.[3] He argues this error was prejudicial because it denied him the opportunity to seek reunification services at a 60-day review hearing following termination of the guardianship. We conclude any error was harmless and deny Father's writ petition.

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] In his petition, Father also requested a stay of the section 366.26 hearing scheduled for December 22, 2016. We denied that request on November 1, 2016.

[3] Pursuant to section 388, subdivision (a)(1), "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

FACTUAL AND PROCEDURAL BACKGROUND

Eight-year-old H.B.'s parents lost custody and failed to reunify with him in a prior dependency proceeding brought under section 300, subdivision (b), due to their extensive drug use. In 2013, the juvenile court terminated Father's reunification services and set a section 366.26 hearing to determine H.B.'s permanent plan.

At the section 366.26 hearing in May 2013, the court appointed H.B.'s maternal aunt as his legal guardian and issued letters of guardianship. The court did not terminate parental rights and ordered supervised visitation for both parents, allowing Guardian to determine the time, place, manner, frequency, and length of visits. The court terminated dependency jurisdiction and vacated all future hearings.

In March 2015, the family again came to the Agency's attention when Guardian allowed unsupervised parental visitation. Father tried to use H.B. to smuggle heroin to Mother while she was incarcerated; he drove H.B. to the jail while under the influence of heroin and methamphetamine. Guardian claimed she was unaware the parents' contact needed to be supervised and signed a safety plan with the Agency stating she would not allow further unsupervised contact.

In June 2016, Guardian again left H.B. unsupervised with Father and Mother. Police conducted a parole search of Father's hotel room and found 14 syringes (one loaded with heroin), 1.1 grams of methamphetamine, a glass pipe, and six metal spoons. The drugs were accessible to H.B., who was sleeping on the floor. A social worker met with Mother and Father after their arrest. Father was not sober and admitted using heroin daily, "a couple of times a day." He claimed he and Mother hid their drugs from H.B.

3

and that on the day of his arrest, the drugs were "nowhere near" where H.B. was sleeping. Mother told the social worker H.B. had been staying with them for the past few weeks and that they often took him to and from school. Guardian told the social worker she had allowed the parents to care for H.B. because she was having trouble with childcare. She claimed she was unaware visits had to be supervised. When the social worker reminded her about her safety plans, Guardian replied she lacked alternative childcare.

On June 24, 2016, the Agency filed a new petition under section 300, subdivision (b), naming Mother, Father, and Guardian. The petition alleged Guardian left H.B. unattended and inadequately supervised. The Agency's detention report did not recommend terminating the guardianship. On June 27, 2016, the juvenile court made a prima facie finding on the section 300 petition, ordered H.B. removed from Guardian's care, and gave the Agency discretion to place H.B. with an approved relative. The Agency detained H.B. with his maternal grandparents, who agreed not to leave him with Guardian or allow unsupervised contact with his parents.

The Agency filed a jurisdiction and disposition report on July 18, 2016, recommending guardianship be terminated and a new section 366.26 hearing be set. At the contested jurisdiction and disposition hearing on August 22, 2016, the court made a true finding on the petition, finding by clear and convincing evidence H.B. was a person described under section 300, subdivision (b). The court found Guardian was on notice parental visits with H.B. needed to be supervised.

Turning to disposition, both parents argued they were entitled to reunification services because the Agency had filed a new section 300 petition instead of a petition

4

under section 388 to terminate the guardianship.  The Agency disagreed.  Noting the case was in the postpermanency phase, the Agency argued services were not required. Moreover, the Agency noted the parents would have to prove reunification was in H.B.'s best interest to be entitled to services.  The court agreed with the Agency.  The court explained the case did not return to square one after termination of guardianship and noted it was the parents' inability to reunify with H.B. after receiving services that resulted in the guardianship.  While acknowledging the cases differed on the procedure to use to terminate guardianship (i.e., §§ 300, 387, or 388), the court stated the cases broadly considered whether due process was met.  Finding the parents had notice the Agency sought to terminate the guardianship and set a new permanency plan based on the Agency's section 300 petition and jurisdiction and disposition report, the court found due process satisfied.

The juvenile court found good cause to terminate the guardianship due to the "long-standing nature of [Guardian's] inability to protect him."  The court recalled the letters of guardianship, ordered continued relative placement, and set a section 366.26 hearing in 120 days (December 22, 2016) to reassess H.B.'s permanent plan.

On October 27, 2016, Father filed a petition for extraordinary writ (Cal. Rules of Court, rule 8.452)[4] arguing the juvenile court erred by terminating the guardianship on a section 300 petition where no section 388 petition had been filed.  Father claims the error was prejudicial because he did not have the opportunity to request reunification services

---

4      Further references to the rules are to the California Rules of Court.

5

at a hearing set 60 days after termination of the guardianship, as section 388 would have afforded. Instead, the court set a section 366.26 hearing 120 days after terminating the guardianship. The Agency filed a response to Father's petition on November 15, 2016, acknowledging section 388 should have been used but denying Father suffered prejudice. H.B.'s counsel filed a letter brief joining in the Agency's arguments.

## DISCUSSION

Three years after establishing a legal guardianship, the Agency sought to terminate it and set a new permanency planning hearing for H.B. At issue in Father's writ petition is whether the Agency took the right procedural steps to terminate the guardianship and whether Father was prejudiced by any failure to do so. We conclude the Agency should have filed a section 388 petition to terminate the guardianship and erred by instead filing a section 300 petition. However, we conclude the error was harmless, as it is not reasonably probable the juvenile court would have awarded Father reunification services had the Agency used the proper procedure.

## I.

## LEGAL PRINCIPLES

At a permanency planning hearing following a parent's failure to reunify with a child, the juvenile court may appoint a legal guardian for a minor and issue letters of guardianship. (*In re Carlos E.* (2005) 129 Cal.App.4th 1408, 1417; § 366.26, subd. (b)(3).) The court retains dependency jurisdiction until the guardianship is established. (§ 366.3, subd. (a).) Thereafter, the court may continue dependency jurisdiction if it is in the child's best interest or, as it did here, terminate dependency jurisdiction and maintain

6

jurisdiction solely over the guardianship. (§§ 366.3, subd. (a), 366.4; Rule 5.740(a)(3); *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1216.)

Once legal guardianship is established, it may be modified pursuant to section 388. (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1418; § 360; Rule 5.740(c).) An interested party may petition the juvenile court to modify or set aside the previous order establishing guardianship on grounds of changed circumstances or new evidence. (§ 388, subd. (a)(1).) If the parties contest termination of the guardianship, the court must hold a hearing within 30 days. (Rule 5.570(f).) Parents whose rights have not been terminated are entitled to notice of that hearing. (Rule 5.740(c)(2).) Before the hearing takes place, the court must order the child social services department to prepare a report evaluating whether the minor could safely remain in the guardian's care if maintenance services were provided. (§ 366.3, subd. (b)(2).) At the hearing, the petitioner (here, the Agency) must show by a preponderance of the evidence termination of the guardianship serves the best interests of the child. (Rule 5.570(h)(1)(D); § 388, subd. (d); *In re Priscilla D., supra,* 234 Cal.App.4th at p. 1218.) Thereafter, the court has three options: it may grant the petition to terminate the guardianship, deny the petition, or deny the petition and order services to maintain the guardianship. (Rule 5.740(c)(3).)

Should the court grant the petition, as it did here, it may vacate its previous order terminating dependency jurisdiction and resume dependency jurisdiction over the child. (§ 366.3, subd. (b)(1)-(2).) Once the court resumes dependency jurisdiction, it "must order that a new plan be developed to provide stability and permanency to the child." (Rule 5.740(c)(4); see § 366.26.) Unless a hearing has already been scheduled to review

7

the child's status, the court must set a new permanency planning hearing within 60 days of terminating the guardianship. (§ 366.3, subd. (b)(2); Rule 5.740(c)(4).) Parents whose rights have not been terminated are entitled to notice of the new permanency planning hearing. (§ 366.3, subds. (b)(3), (f); Rule 5.740(c)(4).)

At the new permanency planning hearing,

> "[i]t shall be presumed that continued care is in the best interests of the child, *unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child*. In those cases, the court may order that further reunification services to return the child to a safe home environment be provided to the parent or parents up to a period of six months, and family maintenance services, as needed for an additional six months in order to return the child to a safe home environment."

(§ 366.3, subd. (f) (italics added).) Thus, the court may consider further efforts at parental reunification at the 60-day review hearing "only if the parent proves, by a preponderance of the evidence, that the efforts would be the best alternative for the child." (Rule 5.740(c)(4).)

## II.

## THE AGENCY ERRED WHEN IT FILED A NEW SECTION 300 PETITION INSTEAD OF PROCEEDING UNDER SECTION 388

As Father argues, and the Agency concedes, the Agency should have filed a postpermanency section 388 petition to terminate the guardianship instead of filing a new dependency petition under section 300.

After the Agency determined Guardian could not safely care for H.B. in 2016, it should have filed a section 388 petition to terminate the guardianship. The court would

8

have held a hearing within 30 days, with notice to Father, to determine whether it was in H.B.'s best interests to grant the petition, deny the petition, or deny the petition but order maintenance services. (Rules 5.570(f), 5.740(c)(3).) Once the court granted the petition and resumed dependency jurisdiction, it would have set a new permanency plan hearing within 60 days, with notice to Father, whose rights had not been terminated. (§ 366.3, subd. (b)(2); Rule 5.740(c)(4).)[5] At that new section 366.26 hearing, the court would have considered further efforts at reunification with Father *only if* Father proved such efforts would be the best alternative for H.B. (Rule 5.740(c)(4); § 366.3, subd. (f).) Otherwise, the court would presume continued care remained in H.B.'s best interest. (§ 366.3, subd. (f).) This is the procedure the Legislature intended the Agency to follow to terminate a legal guardianship created by the juvenile court.

Instead, the Agency filed a new dependency petition under section 300 in 2016, and the case progressed as a separate dependency proceeding. The Agency did not mention its intention to seek termination of the guardianship until its jurisdiction and disposition report, filed on July 18, 2016. In that report, the Agency recommended the court "terminate the guardianship and set a WIC 366.26 hearing to determine a new permanent plan for [H.B.]" because it did not appear Guardian was able or willing to

---

5    The Agency argues Father lacks standing to challenge the procedure used to terminate the guardianship, claiming parents have no right to notice until after the guardianship is terminated. To the contrary, parents whose rights have not been terminated *are* entitled to notice of a hearing on a petition to terminate guardianship. (Rule 5.740(c)(2).) "Undoubtedly, the parents have an interest in these [postpermanency] proceedings until and unless their parental rights are terminated." (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1091.)

9

provide consistent and protective care.  Even if this report were construed as a petition to terminate the guardianship, the juvenile court did not hold a hearing within 30 days, as would be required for a section 388 petition.  (Rule 5.570(f).)  Instead, it terminated the guardianship at the jurisdiction and disposition hearing 35 days later, on August 22, 2016.  Thereafter, the court set a new permanency planning hearing in 120 days, rather than 60 days, as the section 388 procedures would have required.  (§ 366.3, subd. (b)(2); Rule 5.740(c)(4).)

Thus, by filing a new dependency petition under section 300 instead of filing a section 388 petition, the Agency did not follow the proper procedure to terminate the guardianship and set a new permanency planning hearing for H.B.

### III.

### THE ERROR WAS HARMLESS

The procedures applicable to section 388 petitions "must be followed, and a *Request to Change Court Order* (form JV-180) must be used" to terminate a legal guardianship.  (Rules 5.740(c), 5.570.)  As the Agency suggests, these requirements were merely directory, not mandatory, because the rule "does not provide any consequence for noncompliance."  (*In re C.T.* (2002) 100 Cal.App.4th 101, 111.)  "The directory and mandatory designations do not refer to whether a particular statutory requirement is permissive or obligatory, but simply denote whether the failure to comply with a particular step will invalidate the governmental action to which the procedural requirement relates."  (*Ibid.*)  Because rule 5.740(c) is directory, the key question

10

becomes whether the failure to follow the section 388 procedures caused prejudice. (*In re C.T., supra,* at p. 111; *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 880.)

"We typically apply a harmless-error analysis when a statutory mandate is disobeyed, except in a narrow category of circumstances when we deem the error reversible per se. This practice derives from article VI, section 13 of the California Constitution, which provides: 'No judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' " (*In re Jesusa V.* (2004) 32 Cal.4th 588, 624.) "Reversal is justified 'only when the court, "after an examination of the entire case, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the [petitioning] party would have been reached in the absence of the error.' " (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.) Applying that standard, we conclude the error in this case was harmless.[6]

Father contends the court's failure to set a hearing 60 days after terminating the guardianship deprived him of his due process right to notice and an opportunity to be heard regarding reunification services. Reviewing the record as a whole, we conclude there is no reasonable probability the juvenile court would have awarded reunification

---

[6]     We would reach the same result were we to apply the federal constitutional standard (*Chapman v. California* (1967) 386 U.S. 18, 28). The Agency's error in not proceeding under section 388 to terminate the guardianship was harmless beyond a reasonable doubt.

services to Father had the section 388 procedures been followed.  To receive reunification services, Father would have had to "prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child."  (§ 366.3, subd. (f); Rule 5.740(c)(4).)  Nothing in the record reasonably supports such a finding.

Father failed to reunify with H.B. in 2013 after receiving 18 months of reunification services.  His conduct in 2015 and 2016 again brought H.B. to the Agency's attention.  In 2015, Father drove H.B. to Mother's detention facility while under the influence of heroin and methamphetamine, in an attempt to use H.B. to smuggle heroin to Mother.  In 2016, a parole search of Father's hotel room revealed loaded syringes, heroin, and methamphetamine within easy reach of H.B.  Father admitted being a daily heroin user.  He made no attempt to visit H.B. after his removal from Guardian's care in June 2016.  At the time of the August 22, 2016 hearing, a criminal protective order required Father to stay away from his son.  Even if the juvenile court had set a hearing 60 days after terminating the guardianship, the record does not reasonably support a finding that reunification efforts with Father would be the "best alternative" for H.B.  (§ 366.3, subd. (f); Rule 5.740(c)(4).)

Citing section 361.5, Father argues it was the Agency's burden to prove reunification services should not be provided.  As the Agency points out, however, section 361.5 does not apply to postpermanency reunification services.  (*D.T. v. Superior Court* (2015) 241 Cal.App.4th 1017, 1035-1036.)  "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount.  Rather, at this point, 'the focus shifts to the needs of the child for

permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) Postpermanency proceedings to terminate legal guardianship do not return the case to square one so as to trigger a new period of reunification services. (*D.T., supra,* at p. 1035.)

At this stage, we are concerned only with H.B.'s best interests, and there is no reasonable probability the juvenile court would have found reunification efforts with Father would have served that goal. The Agency's failure to follow the section 388 procedures to terminate the guardianship and set a new section 366.26 hearing was harmless error.

DISPOSITION

The petition is denied. Our decision is final as to this court immediately. (Rule 8.490(b)(1).)

McCONNELL, P. J.

WE CONCUR:

NARES, J.

IRION, J.

13