Filed 1/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MALIK T. et al., Persons Coming Under the Juvenile Court Law. | B311135 |
| | (Los Angeles County Super. Ct. No. CK79785A-G) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SHAILYN A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tamara Hall, Judge. Reversed and remanded.

Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell for Plaintiff and Respondent.

Eighteen months after the juvenile court terminated her family reunification services and set the matter for a selection and implementation hearing, Shailyn A. petitioned pursuant to Welfare and Institutions Code section 388[1] for an additional six months of reunification services with her children. Although the juvenile court found Shailyn had demonstrated changed circumstances, the first step of the section 388 analysis, the court stated it lacked authority to order additional reunification services for a parent whose time for services had expired. The court deemed Shailyn's petition a request for immediate return of the children to her care; determined it would not be in her children's best interest to do so, the second step of the section 388 analysis; and denied Shailyn's petition.

On appeal Shailyn contends the juvenile court misunderstood the scope of its authority to order reunification services and, as a consequence, failed to properly exercise its discretion in considering the merits of her petition. Shailyn is correct. Although section 361.5, subdivision (a), generally limits family reunification services to a period not exceeding 18 months after the date a child was originally removed from the physical custody of the child's parent, nearly 30 years ago in *In re Marilyn H.* (1993) 5 Cal.4th 295 the Supreme Court held a parent may utilize the section 388 petition procedure to demonstrate circumstances have changed and additional reunification services would be in the child's best interest. Moreover, section 366.3, subdivisions (e) and (f), expressly authorize the juvenile court at post-permanent plan review hearings to order a second period of

---

[1] Statutory references are to this code.

reunification services if it would be in the child's best interest to do so, ample statutory authority for the relief Shailyn requested. We reverse the order denying Shailyn's section 388 petition and remand for the juvenile court to reconsider Shailyn's request for additional reunification services on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Sustained Dependency Petitions and Removal of the Children from Shailyn's Custody*

On July 6, 2016 the Los Angeles County Department of Children and Family Services (Department) filed a petition pursuant to section 300, subdivisions (a) and (b)(1), on behalf of Shailyn's children Malick (now 14 years old), De'Asia (now 12 years old), Iliah (now 11 years old), Ashanie (now 10 years old), Tayvione (now nine years old), Jaimar (now eight years old) and Rashaad (now seven years old). The initial petition included allegations concerning Shailyn and Deonte J., Shailyn's male companion and the father of all her children except Malick. Malick's father, Michael T., was not named in the petition.[2]

---

[2] The current appeal concerns Shailyn's seven oldest children, who were the subject of the Department's July 6, 2016 dependency petition. Shailyn had two additional children while this case was pending, Mariah A. and Shane A. A dependency petition was filed in February 2019 as to Mariah (based on Shailyn's drug relapse during the pregnancy) and in August 2020 as to Shane (neglect related to safety issues in the home). In April 2019 Shailyn was denied reunification services in Mariah's case, and her parental rights were terminated in December 2019. In October 2020 the Department was ordered to provide family reunification services to Shailyn in Shane's case. By January 2021 Shane was residing with Shailyn.

3

On October 27, 2016 the juvenile court sustained the petition, finding the Department had proved allegations pursuant to section 300, subdivisions (a) (nonaccidental serious physical harm) and (b)(1) (failure to protect), that Shailyn and Deonte had a history of engaging in violent altercations in the presence of the children and that Deonte's violent conduct against Shailyn (with specific instances identified) and Shailyn's failure to protect the children endangered the children's physical health and safety. The court also sustained an allegation pursuant to subdivision (b)(1) that Deonte had a history of substance abuse, was a current abuser of illicit drugs and on prior occasions was under the influence of illicit drugs while the children were in his care and custody. The children were allowed to remain in Shailyn's care under the Department's supervision with an order for family preservation services. The court also signed a permanent (three year) restraining order protecting Shailyn and the children from Deonte. Deonte was allowed monitored visits with the children; Shailyn was not permitted to be the monitor.

On March 14, 2017 the Department filed a subsequent petition pursuant to section 342, and the children were detained from Shailyn. On May 16, 2017 the court sustained the petition, finding pursuant to section 300, subdivisions (a), (b)(1) and (j) (sibling abuse), that Shailyn had physically abused Tayvione by throwing a toy at him, which struck him in the face causing bleeding and sustained swelling and bruising, creating an endangering situation for Tayvione and his siblings. The court further found pursuant to subdivision (b)(1) that Shailyn had a history of substance abuse and was a current user of methamphetamine, amphetamine and marijuana, which rendered her incapable of providing regular care for the children;

4

that Shailyn had on prior occasions endangered the children by driving with them as passengers in her car without using appropriate child safety restraints; and that she also endangered them by allowing Deonte to frequent the home and have unlimited access to the children notwithstanding the court order that his visitation be monitored and the restraining order prohibiting such contact. At the disposition hearing three days later, the court terminated its home-of-parent order, removed the children from Shailyn and ordered family reunification services for her, including a full alcohol/drug treatment program with aftercare and weekly testing, as well as parenting classes and individual counseling to address case issues.

2. *Termination of Shailyn's Reunification Services, Setting the Selection and Implementation Hearing and Identification of Adoption as the Permanent Plan for the Children Other Than Malick*

The children's six-month review hearing (§ 366.21, subd. (e)) was held on November 14, 2017; the 12-month review hearing (§ 366.21, subd. (f)) on April 14, 2018; and the 18-month permanency review hearing (§ 366.22) on September 11, 2018. Shailyn's progress with her case-ordered programs was inconsistent during this period. She completed an in-patient drug treatment program in August 2017 and again in June 2018. She began out-patient treatment in July 2018 but stopped attending soon thereafter.

By the section 366.22 review hearing on September 11, 2018, the Department was recommending adoption with the maternal grandmother for all the children other than Malick. The court found Shailyn had made only partial progress toward alleviating or mitigating the causes necessitating the children's placement, terminated Shailyn's family reunification services and

5

set the matter for a section 366.26 selection and implementation hearing on January 10, 2019.

On January 10, 2019 the court continued the section 366.26 hearing[3] because of inadequate notice. Proceeding to a permanency planning review hearing under section 366.3 (an "RPP," or review of permanent plan in dependency argot), the court found continued jurisdiction was necessary because the conditions that had justified the court in taking jurisdiction still existed. The court also found the permanent plan of adoption as a specific goal was appropriate and ordered adoption as the permanent plan for all the children other than Malick.

At the next RPP on July 11, 2019, with identical orders for the six children other than Malick, the juvenile court confirmed the permanent plan of adoption as a specific goal remained appropriate and was ordered as the permanent plan. The court found each of the children will be adopted and the likely date that goal would be achieved was December 19, 2019. The Department was ordered to provide permanent placement services to each of the children.[4] Also on July 11, 2019 the court again continued the section 366.26 hearing.

---

[3] The section 366.26 hearing has been continued many additional times, largely because of disruptions in court proceedings due to the COVID-19 pandemic, and has yet to be conducted. It is currently scheduled for January 20, 2022.

[4] Section 366.3, subdivisions (a)(1) and (d), require the juvenile court to review the status of a dependent child at least once every six months after a permanent plan has been adopted. The next scheduled RPP hearing for the six children other than Malick on January 7, 2020 was continued multiple times, in large

6

### 3. *Placement of Malick with His Father and His Subsequent Removal; Shailyn's Unsuccessful Requests for Reunification Services*

On September 14, 2018 the Department filed a section 342 subsequent petition concerning Malick, who was then living with a nonrelated caregiver, alleging his father, Michael, and Michael's female companion had a history of engaging in violent altercations in Malick's presence. On October 3, 2018 the Department filed an amended section 342 petition on behalf of Malick. At a hearing the following day, which had been scheduled for the jurisdiction hearing on the original section 342 petition, the court ordered Malick released to Michael over the objection of the Department. During the hearing the court observed Shailyn had already received 18 months of reunification services. On November 14, 2018 the court sustained the amended petition pursuant to section 300, subdivision (b)(1), which now alleged violent conduct by Michael's female companion placed Malick at a substantial risk of serious physical harm. Malick remained released to Michael under the Department's supervision.

After learning of another incident of domestic violence and receiving a referral concerning emotional abuse of Malick by Michael, the Department filed a supplemental petition for a more restrictive placement pursuant to section 387, alleging Michael and several female partners had histories of domestic violence and Michael had a history of substance abuse. The court ordered Malick removed from Michael's custody on June 24, 2019. The court subsequently sustained an amended version of the petition

part due to COVID-related disruptions, and ultimately took place on January 21, 2021.

on September 24, 2019 and ordered the Department to provide him with reunification services. The court denied reunification services to Shailyn.

Following the disposition hearing for Malick, on September 26, 2019 Shailyn filed a section 388 petition asking for six months of reunification services with Malick. In support of her petition Shailyn averred she had been participating in treatment programs, continued to be enrolled in a 12-step program, was drug testing weekly and attending various life-skill classes and programs and had been visiting Malick regularly. In December 2019 Shailyn filed a substantially similar section 388 petition concerning her other six children. The Department opposed the petitions, explaining that Shailyn, who had maintained her sobriety for a time, had relapsed during her pregnancy with her then-youngest child, Mariah, who suffered from prenatal drug exposure. The court denied both petitions after a hearing on December 16, 2019.

4. *Shailyn's March 10, 2020 Section 388 Petitions*

On March 10, 2020 Shailyn filed a new set of section 388 petitions seeking six additional months of reunification services with the seven children at issue in this case.[5] The petitions

---

[5] Shailyn identified as the order she wanted modified the juvenile court's April 23, 2019 denial of reunification services pursuant to section 361.5, subdivision (b)(10). The Department explained in its respondent's brief that the April 23, 2019 order was entered in Mariah's dependency case, not this proceeding. (See fn. 2.) The parties and the juvenile court did not attach any significance to Shailyn's incorrect identification of the order(s) she wanted to modify to provide for additional reunification services. Neither do we.

8

stated, as evidence of changed circumstances, that Shailyn had successfully completed an outpatient substance abuse program on February 20, 2020, continued to participate in 12-step programs and in individual counseling. She attached a letter and certificate confirming her completion of the outpatient program at Tarzana Treatment Centers, an attendance card from the 12-step program and a letter from Wesley Health Centers describing her active participation in mental health treatment beginning in August 2019 and continuing through March 6, 2020. Explaining why it would be in the children's best interest to provide additional services, Shailyn stated, "It is in the child[ren]'s best interest to reunify with [their] mother and have a relationship with [their] extended family and siblings which would give [them] permanency that [they do] not currently have."

On September 18, 2020 the court ordered the Department to prepare a response to the section 388 petitions and scheduled a hearing for January 21, 2021. The Department filed its report in early January 2021, recommending the court deny the petitions because additional reunification services would not be in the children's best interest: "It is in the best interest of the children to remain in the care of [the maternal grandmother] with the permanent plan of adoption."

The Department's response summarized interviews with the program coordinator and a resident advocate at the Valley Oasis domestic violence shelter where Shailyn was living. The staff believed Shailyn would be overwhelmed if required to care for any children other than one-year-old Shane then living with her. The shelter personnel were also concerned that Shailyn seemed focused on obtaining her high school diploma rather than finding employment and housing.

Shailyn, interviewed at the shelter by a dependency investigator, said she had been clean and sober since March 2019, had completed the Tarzana Treatment program and was actively involved in after-care through her church, where she had a sponsor (another member of the church).  Shailyn stated she was working the steps and attended virtual narcotics anonymous meetings daily.  Shailyn expressed her goal of regaining custody of her children and said she felt she could provide appropriate care.  Shane, who was with Shailyn during the interview, appeared clean and healthy, was dressed appropriately for the weather and seemed comfortable in his mother's care.

The maternal grandmother, with whom six of the children were residing,[6] when informed that Shailyn was seeking additional reunification services, responded that it was not a good idea and said she did not want the children returned to their mother, who she believed did not have the mental capacity to care for all eight children.

The investigator also met individually with each of the seven children.  Malick, then 12 years old, said he wanted to live with his father, but indicated he would also like to live with Shailyn to be able to help care for her and his baby brother, Shane.  He did not believe Shailyn could care for all eight children.  Eleven-year-old De'Asia said she wanted to live with Shailyn, although she said she believed both Shailyn and the maternal grandmother would take good care of her and could do a

---

[6]     The boys other than Malick had been living with the maternal grandmother for two years by this point; the three girls had been with her for six months.  The maternal grandmother had expressed interest in adopting the six children.

good job of caring for all eight children. The other five children said they wanted to live with the maternal grandmother.[7]

In a last minute information report filed shortly after its response to the section 388 petitions, the Department advised the court adoption remained the permanent plan for the children other than Malick. The Department's status review report filed January 21, 2021 for the RPP hearing on that date stated Shailyn had been visiting the children weekly, either in person or virtually due to pandemic-related restrictions. Because of a change in counsel for Malick's father, the court continued the hearing on Shailyn's section 388 petitions to March 8, 2021.

     5. *The Section 388 Hearing and the Court's Order Denying Shailyn's Petitions*

At the hearing on March 8, 2021 Shailyn's counsel summarized Shailyn's efforts to achieve and maintain her sobriety (her change of circumstance) and, as to the second step of the section 388 analysis, argued it would be in the best interest of the children to reunify with their mother. Counsel stated, "She does have consistent visits with the children. She has telephonic visits every day, as well as weekly in-person visits with the

---

[7] The investigator asked the children, if given the choice, would they prefer to live with their mother or their grandmother and why they chose the individual they did. Ashanie, then nine years old, said her grandmother helped them and she believed the grandmother would do a better job of caring for all seven children. Iliah, then 10 years old, said she could not explain why she preferred her grandmother. Tayvione, eight years old, Jaimar, seven years old, and Rashaad, six years old, said they chose their grandmother because she gave them treats, popsicles and chocolate.

children.  The children are very bonded to their mother."
Shailyn's counsel noted that Shailyn currently had custody of her youngest child, Shane, and assured the court Shailyn had taken the appropriate precautions to ensure the child's safety.  Counsel emphasized that Shailyn was advocating "a slow transition of the children into mother's custody" and said Shailyn had the support of the maternal grandmother, her church and close friends.

Responding to Shailyn's request, Malick's counsel stated additional reunification services would not be in Malick's best interest.  Minors' counsel for the other children argued the court lacked the authority to grant additional reunification services because the case was "well beyond the period of reunification for all of my clients" and asserted "the court's only option would be to return today."  Based on that premise, minors' counsel asserted Shailyn lacked the capacity to care for eight young children.

The Department argued, although Shailyn had made some progress, she had not established changed circumstances:  "She has a long history of unresolved substance abuse.  And while she's currently on the path to sobriety, her sobriety is very much in the early stages.  She's not yet established a lengthy period of sobriety."  The Department also reminded the court there had been a sustained petition for another of Shailyn's children (Mariah) due to Shailyn's substance abuse and Shailyn's parental rights as to that child had been terminated.  Concurring in the argument of minors' counsel, the Department noted Shailyn was "well past this period of reunifying" and asserted the court could not make a finding that immediate return of the children would be their best interest.

The court found Shailyn had proved changed circumstances and congratulated her on her efforts:  "You are doing all the

things you need to do to make yourself well and whole for your children."[8] The court then stated it agreed with minors' counsel's interpretation of the court's authority: "Counsel is right with respect to the time period for family reunification services, the time to reinstate those services for the majority of your children has expired. So the court would have to make a determination of whether or not it's suitable to place the children with you at this time." The court concluded immediate return to Shailyn was not in the children's best interest based on the concerns expressed by various individuals who had contact with Shailyn, including the maternal grandmother (as reflected in the Department's response to the section 388 petitions), that she was not physically, mentally or emotionally prepared to have all eight children in her care.

After the court announced its ruling, minors' counsel advised all parties on the record that she was asking the court to assess the maternal grandmother for legal guardianship, rather than adoption, as the permanent plan for her six clients. Counsel

---

[8] Addressing Shailyn the court stated, "I sincerely mean this, Ma'am, when I say this, the court is going to congratulate you on your—with respect to the first prong, your changed and changing circumstances. Sometimes it takes people longer than others. You have completed a lot of your case plan. You have been sober since 2019. Although you're only on step one of the 12 steps sobriety program, you have found someone in your sponsor who is a mountain. She's been sober for 32 years. And she, genuinely, cares for you, and the fact that she's allowed you and your eight children to be in her home. And she's observed you with the children, and she has no concerns. And you are currently enrolled—you are in compliance with your medication and your mental [health] counseling."

explained, because of pandemic-related and other delays in the case, as well as Shailyn's ongoing progress, the children had built "a real relationship with their mother." The court acknowledged this development and ordered the Department to assess the maternal grandmother for legal guardianship.

Shailyn filed a timely notice of appeal from the order denying her section 388 petitions.[9]

## DISCUSSION

1. *Section 388 and the Standard of Review*

Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstance and demonstrates modification of the previous order is in the child's best interest.[10] (*In re Jasmon O.* (1994)

---

[9] Several weeks after denying Shailyn's section 388 petitions, at a review hearing for Malick the court terminated its suitable placement order, ordered Malick home of father and terminated dependency jurisdiction with a juvenile custody order granting Michael sole physical and Michael and Shailyn joint legal custody of the child with monitored visitation for Shailyn. The court signed and filed the juvenile custody order on May 7, 2021. Shailyn has appealed the termination and custody orders (case no. B312726) "solely to protect and preserve mother's rights vis-à-vis her pending appeal in case number B311135." (See generally *In re Rashad D.* (2021) 63 Cal.App.5th 156.) On August 12, 2021 we stayed briefing in B312726 pending the decision in the instant appeal.

[10] Section 388, subdivision (a)(1), provides, "Any parent or other person having an interest in a child who is a dependent of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child . . .

14

8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Alayah J.* (2017) 9 Cal.App.5th 469, 478; see *In re Zacharia D.* (1993) 6 Cal.4th 435, 447 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information'"]; Cal. Rules of Court, rule 5.570(e).) "'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' [Citation.] '[T]he change in circumstances must be substantial.'" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.)

When, as in this case, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interests. (*In re Stephanie M., supra*, 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 960; *In re Jacob P.* (2007) 157 Cal.App.4th 819, 828.) Nonetheless, a parent may rebut the presumption that continued care is in the best interest of the child after termination of reunification services by showing that circumstances have changed and would warrant further reunification services. (*In re Marilyn H., supra*, 5 Cal.4th at p. 310.)

We generally review the denial of a section 388 petition for abuse of discretion. (*In re Stephanie M., supra*, 7 Cal.4th at

for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

15

p. 318; see *In re I.B.* (2020) 53 Cal.App.5th 133, 153.) However, when the court's denial is based on a mistake of law, our review is de novo. (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 7; see *In re R.T.* (2017) 3 Cal.5th 622, 627 [court reviews juvenile court's construction of a statute de novo]; *Michael G. v. Superior Court* (2021) 69 Cal.App.5th 1133, 1140 ["we review the interpretation and application of the dependency statutes de novo"]; see also *In re Charlisse C.* (2008) 45 Cal.4th 145, 159 ["a disposition that rests on an error of law constitutes an abuse of discretion"].)

2. *The Juvenile Court Erred in Concluding It Lacked the Authority To Order Additional Reunification Services*

a. *Pre-permanent plan reunification services*

Section 361.5, subdivision (a), provides, with certain limitations not at issue in this case, that family reunification services must be provided to a child, the child's mother and a statutorily presumed father whenever a child has been removed from a parent's custody. For a child who on the date of initial removal from the physical custody of the child's parent was under three years of age, court-ordered services "shall be provided" for a period of six months from the disposition hearing. (§ 361.5, subd. (a)(1)(B).) For a child who on the date of initial removal from the physical custody of the child's parent was three years of age or older, court-ordered services "shall be provided" for a period beginning with the disposition hearing and ending 12 months after the child entered foster care as defined in section 361.49 (that is, the earlier of the date of the jurisdiction hearing or 60 days after the child was initially removed from the custody of his or her parent). (§ 361.5, subd. (a)(1)(A).)

Notwithstanding these time limits, section 361.5, subdivision (a)(1)(C), permits the extension of court-ordered

16

services for a maximum period not to exceed 18 months after the child was removed from parental custody if the permanent plan for the child is return to the custody of his or her parents and the court finds at the 12-month review hearing a substantial probability the child will be safely returned to the parents within that time (or the court determines that reasonable services were not previously provided to the parent). (See *Michael G. v. Superior Court*, *supra*, 69 Cal.App.5th at p. 1141 ["[t]he juvenile court may extend services up to 18 months, however, if it finds there is a substantial probability the child will be returned to the parent's custody within the extended time period, or if it finds reasonable services were not provided"].) In addition, section 361.5, subdivision (a)(4)(A), and section 366.22, subdivision (b), permit a further extension up to a maximum of 24 months at the 18-month review hearing under certain narrowly defined circumstances.[11]

---

[11] As explained in *Michael G. v. Superior Court*, *supra*, 69 Cal.App.5th at pages 1141 through 1142, the limited exception permitting 24 months of reunification services only apples "if the juvenile court determines at the 18-month permanency review hearing that the best interests of the child would be met by the provision of additional reunification services, and if the court concludes that reasonable services were not provided to the parent or there is a substantial probability the child will be returned to the parent's physical custody and safely maintained in the home within the extended period of time . . . [and] the parent is (1) a parent making significant and consistent progress in a court-ordered residential substance abuse treatment program, (2) a minor or a dependent parent at the time of the initial hearing who is making significant and consistent progress in establishing a safe home for the child's return, or (3) a parent who was recently discharged from incarceration,

17

Except for this further limited exception at the 18-month review hearing, the juvenile court must "order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."  (§ 366.22, subd. (a)(1).)  If the child is not returned to the parent's custody at that hearing, the court must terminate reunification services and set a section 366.26 hearing. (§ 366.22, subd. (a)(3); see *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 311 ["the section 366.22 hearing 'represents a critical juncture in dependency proceedings'"].)

b.  *Post-permanent plan reunification services*

The juvenile court believed it was precluded from granting additional family reunification services to Shailyn because services authorized by section 361.5 had been exhausted. Section 361.5, however, does not apply to post-permanency review hearings.  Once the case has proceeded to post-permanency plan review under section 366.3, as here, subdivisions (e) and (f) of that section expressly authorize the provision of additional reunification services if parental rights have not been terminated and the provision of such services would be in the best interest of the child.[12]  (See *D.T. v. Superior*

institutionalization, or the custody of the Department of Homeland Security (DHS) and who is making significant and consistent progress in establishing a safe home for the child's return."

[12]     Section 366.3, subdivision (e), provides:  "Except as provided in subdivision (g), at the review held every six months pursuant to subdivision (d), the reviewing body shall inquire

*Court* (2015) 241 Cal.App.4th 1017, 1036-1037 [section 366.3 governs the availability of reunification services on periodic review in the post-permanency phase when the child has been placed outside the parent's home, but parental rights have not been terminated].)  As set forth in section 366.3, subdivision (f), at the RPP hearing, "It shall be presumed that continued care is in the best interests of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child.  In those cases, the court may order that further reunification services to return the child to a safe home environment be provided to the parent or parents up to a period of six months, and family maintenance services, as needed for an additional six months in order to return the child to a safe home environment." (See *B.B. v. Superior Court* (2016) 6 Cal.App.5th 563, 570 [court may consider further efforts at parental reunification during post-permanency plan review "'only if the parent proves, by a

---

about the progress being made to provide a permanent home for the child, shall consider the safety of the child, and shall determine all of the following:  [¶] . . . [¶]  (4) The extent of the agency's compliance with the child welfare services case plan in making reasonable efforts either to return the child to the safe home of the parent or to complete whatever steps are necessary to finalize the permanent placement of the child.  If the reviewing body determines that a second period of reunification services is in the child's best interests, and that there is a significant likelihood of the child's return to a safe home due to changed circumstances of the parent, pursuant to subdivision (f), the specific reunification services required to effect the child's return to a safe home shall be described."

19

preponderance of the evidence, that the efforts would be the best alternative for the child'"].)

A section 388 petition is the appropriate procedural vehicle to raise the issue of additional reunification services following termination of court-ordered services at the 18-month review hearing:  "[T]he Legislature has provided the procedure pursuant to section 388 to accommodate the possibility that circumstances may change after the reunification period that may justify a change in a prior reunification order.  A petition pursuant to section 388 may be used to raise the issue in the trial court prior to the section 366.26 hearing." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309.)  As the Supreme Court explained in *In re Marilyn H.*, although the focus is on the needs of the dependent child for permanence and stability once reunification services have been terminated in accordance with section 361.5's time frames, a parent is entitled to revive the reunification issue by proving a change of circumstance pursuant to section 388. (*In re Marilyn H.*, at p. 309.)  "Sections 366.26 and 388, when construed together and with the legislative scheme as a whole, are reasonable and bear a substantial relation to the objective sought to be attained.  The parent's interest in having an opportunity to reunify with the child is balanced against the child's need for a stable, permanent home.  The parent is given a reasonable period of time to reunify and, if unsuccessful, the child's interest in permanency and stability takes priority.  Even after the focus has shifted from reunification, the scheme provides a means for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status." (*Ibid.*; accord, *In re I.B.*, *supra*, 53 Cal.App.5th at pp. 153-154.)

The *Marilyn H.* Court's recognition of a parent's right to utilize section 388 to seek additional reunification services notwithstanding that parent's failure to reunify during the section 361.5 reunification period is fully consistent with the multiple provisions of dependency law (and with sound public policy) authorizing the juvenile court to make orders in the best interest of the children under its care.  Section 362, subdivision (a), empowers the juvenile court to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child," and section 245.5 provides, "In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent, parents, or guardian of a minor who is subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of . . . the minor.  These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor."  (See also § 202, subd. (a) [directing the juvenile court "to preserve and strengthen the minor's family ties whenever possible"].)

In sum, the juvenile court erred in concluding that, prior to a properly noticed section 366.26 hearing at which Shailyn's parental rights are terminated, additional reunification services, even if warranted, could not be ordered to assist Shailyn in attempting to regain custody of one or more of her seven oldest children.  Denial of Shailyn's petition, based as it was on an error of law, constituted an abuse of discretion.  (*In re Charlisse C.*, *supra*, 45 Cal.4th at p. 159; *In re D.N.* (2020) 56 Cal.App.5th 741, 762; *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1215.)

  3. *Shailyn Did Not Forfeit Her Challenge to the Juvenile Court's Order*

21

Although Shailyn's section 388 petition properly asked the juvenile court to order additional reunification services and at the hearing on her petition Shailyn argued she had satisfied both steps in the section 388 analysis, her counsel did not attempt to correct the court when it indicated it lacked authority to grant the relief requested. The Department's contention Shailyn thereby forfeited her argument the court failed to properly exercise its discretion is unpersuasive.

The Department, of course, is correct that forfeiture rules apply in dependency cases. As the Supreme Court explained in *In re S.B.* (2004) 32 Cal.4th 1287, "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been made but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule." (*Id.* at p. 1293, fn. omitted; accord, *In re Aaron S.* (2015) 235 Cal.App.4th 507, 521.) But forfeiture generally applies when a party did not alert the juvenile court that he or she objected to an order being made or when a party failed to ask in the juvenile court for relief being sought on appeal, not when, as here, the court has denied a party's request for an order on a legally incorrect ground. For example, in *In re S.B.* the issue was whether the mother's failure to object to the court's order granting the legal guardian authority to determine visitation forfeited the issue. (*In re S.B.*, at p. 1291.) Similarly, in *In re Aaron S.* the court of appeal held a nonminor dependent had arguably forfeited his challenge to the absence of a transition plan by failing to request one or to object to termination of

jurisdiction without the statutorily required plan.  (*In re Aaron S.*, at p. 521.)

The three dependency cases cited by the Department in support of its forfeiture argument are substantially the same.  In *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501, the court of appeal held, by failing to raise the issue in the juvenile court, the parent had forfeited the argument a guardianship order should be reversed because the child services agency had not prepared, and the juvenile court had not considered, a statutorily required preliminary assessment of the foster parent as a prospective guardian.  In *In re Anthony P.* (1995) 39 Cal.App.4th 635, 641, the court held the absence of any objection to the court's failure to provide for sibling visits forfeited the issue on appeal.  And in *In re Richard K.* (1994) 25 Cal.App.4th 580, 590, the court concluded the parent's submission on the child service agency's report and recommendation without any evidence or argument forfeited the claim on appeal that the disposition order adopting that recommendation was not supported.

The Department cites no authority for its position a party who petitions the court for an order based on pertinent statutory authority (here, section 388) and argues in support of the request nonetheless forfeits the issue on appeal if he or she fails to argue the court's denial of the request constitutes an abuse of discretion.  Such a rule of forfeiture would be particularly inapt here, where it appears neither the juvenile court nor counsel for any of the parties was acquainted with controlling Supreme Court authority.  (Cf. *In re Dakota S., supra,* 85 Cal.App.4th at p. 501 ["it would be inappropriate to allow a party not to object to an error of which the party is or should be aware"].)

23

Additionally, "application of the forfeiture rule is not automatic." (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293.) Although the Supreme Court has cautioned that an appellate court's discretion to consider forfeited claims in dependency cases should be used rarely and with special care, it has approved the exercise of that discretion in cases presenting an important question of law. (*Ibid.*) Whether the juvenile court may grant a section 388 petition and order additional reunification services for a parent who has already received 18 months of services presents just such a legal issue.

### 4. *The Juvenile Court's Error Was Not Harmless*

The harmless error doctrine applies in dependency cases. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 624; *In re Celine R.* (2003) 31 Cal.4th 45, 59-60; *In re M.M.* (2015) 236 Cal.App.4th 955, 963.) "This practice derives from article VI, section 13 of the California Constitution, which provides: 'No judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (*In re Jesusa V.*, at p. 624; accord, *B.B. v. Superior Court*, *supra*, 6 Cal.App.5th at p. 572.) "Reversal is justified only when the court, after an examination of the entire case, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the petitioning party would have been reached in the absence of the error." (*B.B.*, at p. 572 (cleaned up).)

Without addressing *In re Marilyn H.*, *supra*, 5 Cal.4th 295, the Department contends what it calls the juvenile court's "alleged error" in asserting it could not order additional

reunification services was harmless because Shailyn could not demonstrate an additional six months of services would be in the children's best interest. In support the Department argues, as reflected in its response to the section 388 petition, that the maternal grandmother and staff from Shailyn's domestic violence shelter had significant concerns about Shailyn's ability to care for eight children and were, in particular, troubled by her apparent inability to focus on the need for adequate housing and employment. In addition, the Department notes, the evidence indicated the children were being well taken care of by the maternal grandmother. The Department also points out that Shailyn had abused drugs once again during her pregnancy with Mariah and had her parental rights terminated in 2019 in that child's dependency proceeding and that her youngest child, Shane, had also been the subject of a dependency petition due to Shailyn's neglectful conduct.[13]

Entirely omitted from the Department's effort to explain why the juvenile court's legal error/abuse of discretion was harmless is any reference to the fact that Shailyn was not seeking an immediate return of any of the children—the apparent focus of concern about her ability to care for all

---

[13] In its argument that further reunification services would not be in the children's best interest, the Department describes Shailyn's 2010 dependency case, which concluded in 2012 with Shailyn successfully reunifying with Malick and De'Asia and the juvenile court awarding her sole legal and physical custody of the children. The relevance of that proceeding to the question of additional reunification services in 2021 appears slight, but, if anything, tends to support Shailyn's argument that she benefits from court-ordered services and is highly motivated to reunify with her children.

eight children and the basis for the juvenile court's ruling—but rather additional reunification services to promote a slow transition back to her care.  And although Shailyn sought further services with respect to all seven children subject to this dependency proceeding, the court in properly evaluating her petitions would be able to assess the potential benefit of additional services as it related to each of them (excluding Malick, for example, or focusing on De'Asia, who expressed a desire to live with her mother).  As discussed, under section 366.3, subdivisions (e) and (f), Shailyn would be entitled, if warranted, to a total of 12 additional months of court services to successfully reunify with one or more of the children, six months while a child was still living away from her home and another six months of family maintenance services if one or more of the children were returned to her care.

In addition, the record shows—and the Department does not discuss—not only that Shane was in Shailyn's custody and, according to the dependency investigator's report, doing well, but also that, based on ongoing visitation and her own improvement, Shailyn had built such a strong relationship with the children by March 2021 that minors' counsel believed legal guardianship, rather than adoption, was the preferred permanent plan for her clients.

Based on this record, the juvenile court's failure to evaluate Shailyn's actual request for reunification services, rather than for an immediate return of all seven children to her custody, was not harmless.  On remand the juvenile court is to conduct a new section 388 hearing and evaluate under the proper standards whether Shailyn has maintained her sobriety and whether, under the circumstances as they exist at the time of the new hearing,

additional reunification services would be in the best interest of any of the children.

## DISPOSITION

The order denying Shailyn's section 388 petition is reversed, and the matter remanded for a new hearing to determine whether providing additional reunification services would be in the children's best interest.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.