Filed 4/25/22  In re S.J. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re S.J., a Person Coming Under the Juvenile Court Law. | B312791 |
| | (Los Angeles County Super. Ct. No. CK86980A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| TAMARA J., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha Matthews, Judge. Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

After Tamara J. failed to resolve the issues that led the juvenile court to assume dependency jurisdiction over her daughter, now 14-year-old S.J., the juvenile court terminated Tamara's family reunification services, appointed a legal guardian for S.J. and terminated dependency jurisdiction. Eighteen months later Tamara petitioned the court under Welfare and Institutions Code section 388[1] to reinstate family reunification services with the ultimate goal of returning S.J. to Tamara's custody. The court denied the petition, concluding Tamara had not demonstrated modification of the court's prior order was in S.J.'s best interests. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Section 300 Petition*

In March 2016 the juvenile court sustained an amended section 300 petition, finding Tamara had a history of engaging in domestic violence and had failed to take medication prescribed for her diagnosed bipolar disorder.[2] In July 2016 the court

_____

[1] Statutory references are to this code unless otherwise stated.

[2] The facts underlying S.J.'s detention and the termination of family reunification services are more fully set forth in our previous opinions. (See *In re S.J.* (Aug. 14, 2017, B277525) [nonpub. opn.]; *In re S.J.* (Sept. 17, 2018, B285770) [nonpub. opn.]; *Tamara J. v. Superior Court* (Sept. 17, 2018, B286979 [nonpub. opn.]; *In re S.J.* (Feb. 13, 2019, B291242) [nonpub. opn.].) In addition, we take judicial notice pursuant to Evidence

declared S.J. a dependent child of the juvenile court, removed her from Tamara's custody and ordered family reunification services, including parenting classes, a domestic violence support group, individual counseling and psychiatric care with medication compliance. The court also ordered unmonitored visitation for Tamara.

   2. *The Status Review Hearings and Termination of Family Reunification Services*

   On June 20, 2017, after the combined six- and 12-month review hearings (§ 366.21, subds. (e) & (f)), the juvenile court found Tamara had made significant progress on her case plan. However, the court agreed with the assessment of the Department and S.J.'s counsel that Tamara's recent emotional instability, including one incident that resulted in a physical altercation with S.J.'s father and the issuance of a temporary restraining order against her, combined with Tamara's recent failure to attend therapy and address S.J.'s special needs,[3] created a substantial risk of harm to S.J. if she were returned to Tamara's custody at that time. The court found a substantial probability S.J. could be returned to Tamara's custody after an additional six months of services and set the matter for an 18-month permanency planning hearing (§ 366.22). We affirmed the

---

Code sections 452, subdivision (d), and 459 of the record in Tamara's most recent appeal (*In re S.J.,* B298673), which was dismissed on November 1, 2019 after neither Tamara nor her appointed counsel was able to identify any arguable issues. (See *In re Phoenix H.* (2009) 47 Cal.4th 835, 838.)

[3]    S.J. has been diagnosed with chromosomal deletion syndrome, learning disabilities, moderate intellectual disability and a history of seizures.

juvenile court's findings as supported by substantial evidence. (See *In re S.J.* (Sept. 17, 2018, B285770) [nonpub. opn.].)

In an October 24, 2017 report prepared for the 18-month review hearing, the Department recommended adoption as S.J.'s permanent plan. The Department reported Tamara had begun behaving erratically while S.J. had been with her on a two-month extended visit. Tamara had stopped taking her prescribed medication for bipolar disorder and had not been regularly attending therapy appointments. She also filed a false police report accusing S.J.'s father of assaulting her in S.J.'s presence. After being told that S.J. and her father denied the incident, Tamara admitted she had lied. Multiple service providers reported Tamara had become increasingly erratic, angry, less compliant and appeared preoccupied with grievances concerning S.J.'s father. In late October Tamara was involuntarily hospitalized on a 72-hour psychiatric hold. The contested 18-month review hearing was held on November 29, 2017 after which the juvenile court took the matter under submission. On December 6, 2017 the court terminated reunification services, ordered monitored visitation for Tamara and set a selection and implementation hearing. We denied on the merits Tamara's petition for extraordinary writ challenging the court's order. (See *Tamara J. v. Superior Court* (Sept. 17, 2018, B286979 [nonpub. opn.].)

3. *Tamara's First Section 388 Petition and the Selection and Implementation Hearing*

On April 3, 2018 Tamara filed a section 388 petition, requesting S.J. be returned to her custody with a home-of-parent order or, in the alternative, that reunification services be

reinstated. Tamara asserted she had been attending monthly therapy sessions and had been taking her prescribed medication.

In reports prepared for the selection and implementation hearing and in response to the petition, the Department recommended the petition be denied and legal guardianship be identified as S.J.'s permanent plan. In support of its position the Department explained that Tamara's therapy sessions had been infrequent, she had appeared lethargic during recent visits with S.J. and she had made inappropriate statements to S.J. regarding her finances. Tamara had also recently tested positive for opiates after a Department social worker suspected she was under the influence of drugs and directed her to report for an on-demand test. Tamara's therapist stated she had concerns about Tamara's medication compliance and her ability to handle stress.

The hearing on the petition and the selection and implementation hearing was held on July 9 and 10, 2018. The juvenile court denied Tamara's petition for the reasons cited by the Department, and we affirmed the juvenile court's order. (See *In re S.J.* (Feb. 13, 2019, B291242) [nonpub. opn.].) The court identified legal guardianship with nonrelated extended family member Lakeisha M. as S.J.'s permanent plan.

4. *Appointment of Legal Guardian and Termination of Dependency Jurisdiction*

In reports prepared for the January 31, 2019 permanency planning review hearing the Department stated S.J. was thriving in Lakeisha's home, where she had been living since July 2018. She was enrolled in afterschool activities, including dance and basketball. S.J. told a Department social worker, "I am very happy living with [Lakeisha]. I don't worry anymore." She also said she enjoyed her weekly visits with Tamara.

5

In May 2019 Tamara filed a second 388 petition seeking unmonitored visitation with S.J. Tamara asserted she had continued to attend therapy sessions and was compliant with her medication. The Department recommended the juvenile court deny the petition. In its response the Department summarized a recent meeting with Tamara during which she again appeared preoccupied by her grievances concerning S.J.'s father. The Department reported Tamara "appears to be under the false belief that [S.J.'s] father is the source of all of her problems." Tamara also told the social worker that "all everybody talks about is what is in [S.J.'s] best interests but nobody ever considers what is in [my] best interest." Tamara denied there had ever been concerns about S.J.'s safety based on her own behavior.

A second permanency planning review hearing was held on June 6, 2019, at which Tamara withdrew her 388 petition, stating she wished the legal guardianship to move forward. The juvenile court appointed Lakeisha as legal guardian, ordered monitored visitation for Tamara and terminated dependency jurisdiction. We dismissed Tamara's appeal of the court's order pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, 838. (See *In re S.J.* (Nov. 1, 2019, B298673).)

5. *Tamara's Third Section 388 Petition*

On January 27, 2021 Tamara, representing herself, filed a third section 388 petition requesting the court return S.J. to her custody. Tamara claimed she had been working to be a better mother and had been continuing to attend therapy. She stated she and S.J. had been traumatized by their situation and S.J. would be most at ease living with her biological mother. In a letter accompanying her petition Tamara wrote she had been

depressed living alone during the pandemic, she asserted S.J.'s father had lied to the court in 2017, and she stated she no longer trusted anyone. Attached to the petition was an August 10, 2020 letter from Tamara's therapist stating Tamara had been diagnosed with major depressive disorder and was stable and compliant with her prescribed medication. A subsequently submitted letter from the therapist dated March 24, 2021 repeated the information in the prior letter and also stated Tamara "exhibits heightened reactions of anger and irritability" and "demonstrates awareness around her heightened reactions and is working to integrate grounding techniques."

In its May 20, 2021 written response the Department reported that S.J. had recently told the Department social worker she was more comfortable with Lakeisha and did not want to live with Tamara. S.J. said Tamara often became angry for no reason, both with S.J. and others. Tamara also said negative things to S.J. about S.J.'s father, which made S.J. "upset inside." Lakeisha also said Tamara got angry with S.J. and pressured S.J. not to have contact with her father. According to Lakeisha, S.J.'s counselor had considered limiting S.J.'s contact with Tamara because the visits upset her.

Tamara told the Department social worker that she wanted to reestablish reunification services with the goal of S.J. returning to her custody. Tamara again stated she did not trust anyone and asserted S.J.'s father had lied to the court in 2017. She said she was still in therapy due to previous abuse by S.J.'s father. Tamara was aware that S.J. did not want to live with her, but Tamara believed it was a result of negative things Lakeisha told S.J. and because S.J. wanted to have a continued relationship with her father, which Tamara would not have

7

allowed. Tamara also told the social worker that, if the court denied her petition, she would leave California.

The Department recommended the court deny Tamara's petition based on Tamara's limited insight into her role in the events leading to dependency jurisdiction and guardianship and her continued belief S.J.'s father was the source of her problems, including that S.J. had not been returned to her custody. S.J.'s counsel also opposed Tamara's petition.

At the hearing on May 25, 2021 Tamara testified she was taking her prescribed medication, was going to therapy twice a month and was working on managing her anger and frustration. She acknowledged her anger upset S.J. Tamara described her visits with S.J., saying they talked about S.J.'s school and her friends.

After argument the juvenile court denied Tamara's petition. The court stated, "Mother is actually working on the case issues and is at least shown changing, if not changed, circumstances." However, the court observed Tamara was "still blaming other people" for her situation and "it just really doesn't seem that mother is yet able to have empathy and insight for what this whole experience has been like for [S.J.] and [S.J.'s] needs as opposed to mother's needs." Ultimately, the court found it was not in S.J.'s best interests to reinstate services or return S.J. to Tamara's custody, stating, "[S.J. has] been in this guardianship for several years now. She's settled. She has a permanent home. . . . It simply would not be in the child's best interest to disrupt her life again in order to allow mother another chance to reunify with her."

Tamara filed a timely notice of appeal.

# DISCUSSION

### 1. *Governing Law and Standard of Review*

A request to modify, replace or terminate a guardianship established by the juvenile court pursuant to section 360 or 366.26—a dependency guardianship—is governed by the procedures provided in section 388 for modification of court orders. (*B.B. v. Superior Court* (2016) 6 Cal.App.5th 563, 569; *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1217-1218; *In re Carlos E.* (2005) 129 Cal.App.4th 1408, 1417; see Cal. Rules of Court, rule 5.740(d) ["[a] petition to terminate a guardianship established by the juvenile court, to appoint a successor guardian, or to modify or supplement orders concerning a guardianship must be filed in the juvenile court" using Judicial Council form JV-180 applicable to section 388 petitions].)

Section 388 provides for modification of juvenile court orders when the moving party (1) presents new evidence or a change of circumstance and (2) demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Y.M.* (2012) 207 Cal.App.4th 892, 919; see Cal. Rules of Court, rule 5.570(e); see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 455 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information'"].)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for

9

permanency and stability.  (*Ibid.; In re Malick T.* (2022) 73 Cal.App.5th 1109, 1123.)  "[B]est interests is a complex idea" that requires consideration of a variety of factors.  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.)  In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner.  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

If the juvenile court has ruled the parent failed to carry his or her initial burden to demonstrate new evidence or changed circumstances, the first step of the analysis, the question for the reviewing court is whether that finding is erroneous as a matter of law.  (See *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [where the issue on appeal turns on a failure of proof at trial, "the question for a reviewing court [becomes] '"whether the evidence compels a finding in favor of the appellant as a matter of law"'"]; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156 [same].)  We review the court's best interest finding for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary or irrational determination.  (*In re Stephanie M., supra*, 7 Cal.4th at pp. 318-319.)  We do not inquire whether substantial evidence would have supported a different

order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court.  (*Ibid*.)

  2.  *The Court Did Not Abuse Its Discretion in Denying Tamara's Section 388 Petition*

Tamara asserts her continued therapy, medication compliance and recognition of her anger management issues presented a change of circumstances and merited, if not immediate return of S.J. to her custody, at least additional reunification services with the goal of S.J.'s return to her custody. While Tamara's efforts certainly constituted "new evidence" within the meaning of the first prong of section 388, notwithstanding the juvenile court's suggestion they showed "changing," rather than "changed," circumstances, Tamara's failure to significantly address her stress and anger management issues was the appropriate focus of the second prong of the analysis.  (See *In re J.C.* (2014) 226 Cal.App.4th 503, 527 [a parent's petition to reopen reunification efforts "must establish how such a change will advance the child's need for permanency and stability"]; see also *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 225 ["a section 388 order for reunification services at this late date would deprive [the child] of a permanent, stable home in exchange for an uncertain future"].)  In this regard, Tamara's evidence fell far short of demonstrating that granting her petition would be in S.J.'s best interests.

S.J. and her guardian both told the social worker that Tamara still had episodes of unprovoked anger directed at S.J. and others.  Tamara had also failed to take any responsibility for her role in S.J.'s removal, primarily blaming S.J.'s father for her situation and continued need for therapy.  This lack of insight into her own behavior weighs heavily against any modification of

11

the court's prior order.  (See *In re Mickel O., supra*,
197 Cal.App.4th at p. 615 [the change in circumstances must be
sufficiently significant that it "'requires a setting aside or
modification of the challenged prior order'"]; see also *In re
Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct
a problem one fails to acknowledge"]; *In re Esmeralda B.* (1992)
11 Cal.App.4th 1036, 1044 [same].)

Tamara argues it is in S.J.'s best interests, and S.J. will be
most at ease, living with her biological mother.  However, shared
genetics alone are not sufficient to satisfy the best-interests
prong; if they were, no parent seeking modification of a court
order under section 388 would need to show the proposed
modification actually benefited the dependent child.  (See *In re
J.C.*, *supra*, 226 Cal.App.4th at p. 527 [genetic relationship alone
was insufficient to demonstrate modification of the court's order
would promote the child's interest in permanency and stability].)
Tamara's argument also disregards S.J.'s unequivocal preference
for staying in the home she has known for almost four years.
While a child's placement preference is not dispositive, Tamara's
failure to acknowledge her daughter's feelings and her statement
she would leave the state if her petition were not granted
underscore the court's finding Tamara is currently unable to put
S.J.'s needs above her own.  (Cf. *In re Aljamie D.* (2000)
84 Cal.App.4th 424, 432 ["[w]hile a child's wishes are not
determinative of her best interests, the child's testimony that she
wants to live with her mother constitutes powerful demonstrative
evidence that it would be in her best interest to allow her to do
so"].)  In addition, both S.J.'s guardian and her therapist
expressed concern that visits with Tamara upset S.J.
Conversely, S.J. was stable and thriving in the custody of her

legal guardian, with whom she felt safe and secure.  The court's denial of Tamara's petition under these circumstances was a proper exercise of its discretion.  (See *In re J.C.,* at p. 527.)

## DISPOSITION

The juvenile court's May 25, 2021 order denying Tamara's section 388 petition is affirmed.


PERLUSS, P. J.


We concur:



SEGAL, J.



FEUER, J.