Filed 6/21/24  In re Anthony G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ANTHONY G., a Person Coming Under the Juvenile Court Law. | B332145 (Los Angeles County Super. Ct. No. CK87992) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>KYLEE G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Zeke Zeidler, Judge.  Reversed and remanded with directions.

Erin Riley Khorram, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Kylee G. (Mother) appeals from the juvenile court's order denying her Welfare and Institutions Code section 388[1] petition to reinstate reunification services and allow unmonitored visitation with 12-year-old Anthony G. or, in the alternative, to place Anthony in Mother's home. Mother contends the juvenile court erred in denying her petition without setting an evidentiary hearing because she showed changed circumstances by her completion of a drug treatment program, negative drug testing over six months, engagement with recovery services and therapy, and positive visitation with Anthony.

We agree the juvenile court abused its discretion in summarily denying Mother's section 388 petition because Mother's prima facie showing and undisputed facts in the record supported a finding of both changed circumstances and that unmonitored visitation would be in Anthony's best interests. We reverse and remand with directions for the court to set an evidentiary hearing on Mother's petition.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

A.     *Prior Juvenile Welfare History and the Sustained*
       *Dependency Petition*

Anthony first came to the attention of the Los Angeles County Department of Children and Family Services (Department) in May 2011, when he was four months old.  The Department at that time received a referral stating that Anthony's father, Joel G., overdosed on heroin and died, and Mother, who had a history of substance abuse, presented as being under the influence of heroin.  After the May 2011 referral, the Department received several additional referrals, and three cases were filed against Mother concerning allegations of abuse and neglect of Anthony.[2]

On August 9, 2017 the juvenile court sustained a dependency petition filed on behalf of Anthony pursuant to section 300, subdivision (b)(1), alleging Mother had a history of substance abuse, including methamphetamine, marijuana, alcohol, and prescription medication, and was a current user of heroin and methadone.  Further, on prior occasions in 2017, Mother possessed, used, and was under the influence of heroin while Anthony was in her care, and Anthony was a prior dependent of the juvenile court due to Mother's substance abuse. The court ordered Mother to complete as part of her case plan a substance abuse treatment program.

---

[2]     The record does not reflect how the cases were resolved.

B.	*Termination of Reunification Services and Appointment of Legal Guardians*

At the September 7, 2018 12-month review hearing (§ 366.21, subd. (f)), the juvenile court terminated Mother's reunification services, finding Mother was not in substantial compliance with her case plan.  Mother's attendance rate for her drug treatment program was 70 percent, and she missed eight of her last 12 drug tests.  Although Mother repeatedly told social workers she was in compliance with her case plan, she failed to provide the Department with any evidence of enrollment in individual counseling or a 12-step program.  The court found there was no likelihood Anthony would be returned to Mother before the end of the 18-month review period.

At the January 7, 2019 selection and implementation hearing (§ 366.26), the juvenile court granted legal guardianship of Anthony to the maternal grandfather, Michael D., and the maternal step-grandmother, Cindy D. (together, guardians).  The court terminated dependency jurisdiction with "Kin-GAP" (Kinship Guardian Assistance Payments) in place.  The court ordered Mother to have visitation consistent with the court's prior dependency orders.[3]

C.	*Mother's March 2021 Section 388 Petition*

On March 16, 2021 Mother filed a section 388 petition requesting Anthony be returned to her custody, or in the alternative, that she receive unmonitored weekend and overnight visits.  Mother submitted certificates of completion showing she

---

[3]	The appellate record does not reflect what visitation the juvenile court ordered for Mother.

4

completed an outpatient drug and alcohol program and participated in courses in relapse prevention, anger and stress management, and parenting education. Mother stated she had attended at least one 12-step program meeting per week and maintained regular communication with her sponsor. Moreover, in March 2019 the Department closed a referral relating to Mother's then-infant son Jared (Anthony's half-brother), leaving Jared in the care of Mother and Jared's father, Michael C.

On April 14, 2021 the juvenile court, without reinstating dependency jurisdiction,[4] summarily denied Mother's petition, finding that almost all of the attachments to the petition predated the termination of jurisdiction,[5] and Mother's attorney failed to present any new information regarding changed

---

[4]     Pursuant to section 366.4, where the juvenile court has terminated dependency jurisdiction after ordering a permanent plan of legal guardianship with a relative guardian, the court retains limited jurisdiction over the dependent child as a ward of a guardianship. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 300, fn. 4; *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1216; *In re R.N.* (2009) 178 Cal.App.4th 557, 564-565.) The court may consider post-termination section 388 petitions; it also may vacate the order dismissing its dependency jurisdiction. (*B.B. v. Superior Ct.* (2016) 6 Cal.App.5th 563, 569; *Priscilla D.*, at p. 1216; see § 366.3, subd. (b)(1)-(2).)

[5]     Mother's certificates of completion for her outpatient drug treatment program, parenting classes, and anger/stress management classes were dated in December 2018, more than two years before she filed her section 388 petition. Mother's certificate of participation in a "Partnership for Families" program covered the period from March 2019 through February 2020.

5

circumstances and Anthony's best interests.  However, in response to Mother's complaint that she was not able to visit with Anthony because of friction between Cindy and the maternal grandmother, Leisa S., the court ordered the Department to conduct a Child and Family Team (CFT) meeting to create a new visitation schedule.

In May 2021 the Department reported that at the CFT meeting the guardians stated Mother had not consistently visited Anthony during recent months, missing visits without explanation.  However, the guardians and Mother agreed that it would be a positive thing for Mother to increase the frequency and consistency of her contact with Anthony.  Anthony, interviewed privately, stated he enjoyed living with the guardians and things were going well, but he would like to live with Mother.  He visited with Mother one or two times per week in the past, but he had not seen her for about two months. Anthony wanted to spend some time with Mother alone and some time with Mother and Jared.

On May 18, 2021 the juvenile court ordered that Mother would have monitored visits on Sundays from 2:00 to 8:00 p.m. The court denied Mother's request for a step-up plan to unmonitored visits, finding the court, and not the guardians, should determine whether liberalized visitation was appropriate. The court ordered visits to be monitored by a mutually agreed upon monitor or by a professional monitor paid for by Mother.

D.      *The Guardians' Efforts To Adopt Anthony*

On May 3, 2022 the guardians filed a section 388 petition to terminate Mother's parental rights so that they could adopt Anthony.  The petition stated Mother only visited Anthony six

6

times from June through August 2021 and after that the professional monitor suspended services due to nonpayment. Mother did not attempt to contact a monitor to resume visits until April 2022, after not seeing Anthony for eight months. The guardians expressed a concern (but without supporting evidence) that Mother's substance abuse was ongoing, and they believed adoption would provide a permanent and stable life for Anthony.

In a June 9, 2022 supplemental report, the Department reported on the social worker's telephonic interview with Raymond Jones, who had served as a professional monitor for Mother's visits for about two years. Jones opined based on his interaction with Mother that she was still using drugs. He observed open and healed sores on Mother during visits, and her appearance and clothing were always unkempt. Jones did not hear from Mother for about eight months; only after the guardians filed their section 388 petition did he receive a call from Mother. He believed that Leisa (the maternal grandmother) had been paying for Mother's visits and Leisa was the "glue" for maintaining visitation between Mother and Anthony. Miesha Young-Blackmon, who served as a monitor for Leisa's visits with Anthony, told the social worker she believed Cindy was trying to alienate Anthony from Mother and Leisa, and Cindy once told Young-Blackmon that "she does not want [Leisa] or [M]other to be a part of the case" and wanted them to "go away." In an interview with the social worker, Cindy denied saying this.

On June 13, 2022 the juvenile court reinstated jurisdiction based on the 2017 sustained dependency petition and set a new selection and implementation hearing to address possible adoption of Anthony. The court appointed Sara Hough, a clinical and forensic psychologist, as an expert to conduct a psychological

7

examination of Mother and Anthony pursuant to Evidence Code section 730 and to prepare a bonding study.

In the August 18, 2022 section 366.26 report, the Department reported that Anthony had a "very strong[-]bonded attachment to his caregivers" and had adjusted to life in the guardians' home. The guardians were meeting Anthony's physical and emotional needs. Mother admitted she had not had contact with Anthony for a period of four months from December 2021 until April 2022 (but she denied an eight-month lapse). Mother told the social worker her vehicle had been stolen and Jared required medical care; Mother therefore suffered significant financial hardship and could no longer afford to pay Jones to monitor visits with Anthony.[6] Further, the guardians were unwilling to work with her to establish alternative visitation arrangements. In August 2022 the Department set a schedule for Mother to visit Anthony for two hours on Sunday mornings with a Department monitor.

Dr. Hough filed her report on August 19, 2022. She reported that Anthony, then 11 years old, was "alert, oriented, calm, and cooperative"; he was "neatly groomed"; and he displayed "no oddities" in his behavior during the evaluation. He was doing well in school and reported that he enjoyed living with his grandparents "but would prefer to live with his mother." When Mother and Anthony were together, they "were observed engaging, talking, playing, sharing stories which were appropriate. [Anthony] did not appear to be under stress, nor did he appear to be coerced in any manner. [Anthony] and [M]other

---

[6] Mother told the case worker it was costing her almost $2,000 per month to visit with Anthony.

. . . appeared to be very comfortable with each other." Based on her observations and the information reported by Mother and Anthony, Dr. Hough opined there was a "strong bond" and "[i]t would NOT be in the best interest of minor to terminate parental right[s]." Further, "[w]hile minor has been with his grandparents for over 4 years and there is clearly a strong bond, minor wants to return to his mother."

Dr. Hough acknowledged that although Mother did not appear to be under the influence of drugs or alcohol and reported being sober, a review of the case file showed Mother had not completed her case plan,[7] she was no longer testing under court supervision, she had missed visits with Anthony, and she initially failed to show up (and was then late) for previously scheduled clinical evaluations. Dr. Hough opined, "Mother clearly suffers from addiction and the process of sobriety can take time," but "[i]f [Mother's] report of her current sobriety is accurate then she should be given one more opportunity to prove her desire to regain custody."

At the February 28, 2023 selection and implementation hearing, minor's counsel called Anthony to testify. Anthony, who had recently turned 12, testified he visited with Mother on Sundays, when they would often go bowling. Asked by the juvenile court if he wanted to be adopted if it meant he might not be able to see Mother until he was 18, Anthony responded, "If I

---

[7] It is not clear from Dr. Hough's report whether she was aware that Mother belatedly submitted certificates of completion for her outpatient drug treatment program, parenting classes, and anger/stress management classes with her March 2021 section 388 petition.

9

can't see her, no." Asked why, Anthony began to cry and answered, "because I like seeing my mom" and "because she's my mom." Anthony stated he believed that his guardians would allow him to see his mother because they "always get the social worker to try to get me to see my mom." Minor's counsel argued against adoption based on Anthony's expressed wishes, and Mother's attorney argued the beneficial parental relationship exception to adoption applied based on Dr. Hough's bonding study.

The juvenile court found Anthony was not adoptable, citing section 366.26, subdivision (c)(1)(B)(i) and (ii).[8] The court ordered that Anthony would remain in a permanent plan of legal guardianship with the guardians, with the goal of terminating jurisdiction. The court ordered that Mother would continue to have in-person visits on Sundays for two hours at a neutral

---

[8] Section 366.26, subdivision (c)(1)(B)(i), provides an exception where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." Section 366.26, subdivision (c)(1)(B)(ii), provides an exception to the termination of parental rights where the juvenile court finds a compelling reason why termination would be detrimental to a child because "[a] child 12 years of age or older objects to the termination of parental rights." The minute order reflects only the court's finding that Anthony was not adoptable under section 366.26, subdivision (c)(1)(B)(ii), without citing the beneficial parental relationship exception under subdivision (c)(1)(B)(i). The court's oral pronouncement controls. (See *People v. Morales* (2014) 224 Cal.App.4th 1587, 1594 ["[w]hen there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls"].)

10

location, with a monitor approved and arranged by the Department.  The Department was granted discretion to liberalize visitation and permit Leisa to serve as a monitor.

E.    *Mother's August 2023 Section 388 Petition*

On August 10, 2023 Mother filed a section 388 petition requesting the juvenile court "[r]eturn Anthony to Mother [home-of-parent order] or order six months of family reunification services and liberalize Mother's visits to unmonitored overnight visits or six months of family reunification services and give Mother unmonitored day visits."  (Capitalization omitted.)

In her supporting declaration, Mother described the changed circumstances supporting her petition:  "I re-engaged in treatment on January 3rd, 2023 and since then I have completed two phases of treatment and am currently on my last phase.  I have been regularly attending meetings and have been taking both mandatory and voluntary drug tests."  Further, Mother met with her sponsor every week and attended community self-help meetings regularly.  She was under the care of a psychiatrist, whom she had been seeing regularly for the past three months; the psychiatrist had prescribed an antidepressant for her.  Mother had also been meeting since January 2023 with Angel Esparza, a therapist and drug treatment specialist, who helped Mother maintain her sobriety.  In addition, Mother was living with Michael C., "who has been a stable and supportive influence in [Mother's] life."[9]

---

[9]    In his June 2022 interview by a Department social worker, Michael C. denied any concern regarding Mother's substance

11

In a letter dated June 29, 2023, Esparza confirmed Mother's participation in drug treatment programs starting on January 3, 2023.  Mother entered a residential treatment program at Casa De Las Amigas on January 8, and successfully completed the program on February 6.  Mother then began day treatment on February 9 and completed the program on March 1.  She transitioned to a Phase I group on March 3 and was scheduled to complete phase I on June 30, which would be followed by Phase II starting on July 6.  In addition, Mother had negative comprehensive urine drug screens on February 17, 22, and 23, March 3, 10, 22, and 23, April 28, May 1 and 18, and June 5, 21, and 27.

Mother's sponsor, Tanya Duck, wrote a letter to the juvenile court dated August 9, 2023 stating, "[Mother] is very dedicated to the groups she attends, 4 per week, and has commitments at all of them.  She has built up a very strong support system of women and is proactively working to be better in all areas of her life.  She also has a great support system at home with her partner and their son, Jared."  Mother was "highly accountable for her actions, understands why she is in this situation and striving to do whatever it takes to stay sober, most importantly, and to be reunited with her son."  Mother also submitted attendance sheets from her recovery program showing regular attendance at three or more meetings per week between February 10 and July 2, 2023.

---

abuse or other behaviors.  Michael C. stated he would drug test Mother "upon any suspicions" of drug use, and he would not put Jared or his 15-year-old son from a previous relationship at risk if he had concerns about Mother.

12

With respect to Anthony's best interests, Mother declared that since the February 28, 2023 selection and implementation hearing, Mother consistently visited with Anthony, but visits were contingent on a Department monitor being available on a Sunday and the guardians' schedules. As a result, Mother had "only been getting maybe half of [her] visits because Anthony is not being made available most Sundays by the Legal Guardians." All of Mother's visits had gone "very well," and she and Anthony had a "great relationship." Mother stated Anthony asked about Jared during every visit, and he liked to see pictures of his brother. Anthony asked Mother to bring Jared to visits, but Mother explained this was not allowed and she wanted to focus on Anthony during their time together. Mother declared that her goal was to reunify with Anthony, and because she lived near him, "he will not have to switch schools, or lose friends or anything like that." Mother wanted Anthony to have an "ongoing relationship with [the guardians] because they are his [g]randparents and have provided good care for him for a long time," but she felt Anthony would "benefit greatly" from living as a family with Mother and Jared.

In a status review report for the August 25, 2023 permanency planning hearing, the Department reported that in 2023 Mother had monitored visits with Anthony on February 19, March 5, 12, 19, and 26, April 12 and 30, May 7 and 14, June 4 and 11, and July 3. Mother did not call the social worker to confirm visits, and, as a result, she did not have visits on April 16 and 23, May 21 and 28, June 18, and July 2, 9, and 23. Mother did not visit on April 2 because she was sick; on June 25 no monitor could not be provided; and on July 16 the guardians were out of town with Anthony. The social worker who monitored

13

visits reported the visits had "gone well without any significant issues or concerns"; Mother and Anthony "interact positively and appropriately"; and "Anthony was reported to enjoy his visits." When the social worker asked Anthony privately on August 6, 2023 whether he wanted monitored or unmonitored visits with Mother, he twice responded, "I don't know." The guardians remained adamant that Mother's visits remain monitored due to Mother's history of substance abuse and Michael D.'s (the maternal grandfather/guardian) unwillingness to monitor Mother's visits due to "friction" it would cause with Cindy. The Department did not address Mother's section 388 petition in its status review report.[10]

On August 25, 2023 the juvenile court summarily denied Mother's section 388 petition without a hearing. At a permanency planning review hearing held the same day, the court stated it found the section 388 petition had "not stated sufficient new evidence or a change of circumstance [as] to the requested orders," nor did the petition show "best interest to the requested orders of home-of-mother or family reunification services or unmonitored overnights or family reunification services with unmonitored day visits." The court selected legal guardianship as Anthony's permanent plan, and it (again) terminated dependency jurisdiction, ordering that Mother would have monitored visits for two hours on Sundays "monitored by a professional monitor paid for by the Mother, unless the Mother and guardians are able to agree on another relative to monitor the visits."

_____

[10]     On appeal, the Department states that it took no position in the juvenile court on Mother's section 388 petition.

Mother timely appealed from the order denying her section 388 petition.  On March 28, 2024, after Mother filed her opening brief, the Department submitted a letter in lieu of a respondent's brief reporting that on March 8, 2024 the Department filed a supplemental petition under section 387 alleging that Michael D. physically abused Anthony and Cindy failed to protect Anthony from the abuse.[11]  On March 11, 2024 the juvenile court detained Anthony, placed him in Leisa's custody, and granted the Department discretion to liberalize Mother's visitation to unmonitored visits and to walk on any request to release Anthony to Mother.  In its letter, the Department stated that "[i]n light of [the Department] taking no position as to the mother's section 388 petition below and recent post-judgment events, [the Department] will be taking no position on appeal."

**DISCUSSION**

A.   *Section 388 Petitions and Standard of Review*

Section 388 provides for modification of a juvenile court order based on a change in circumstances or new evidence, where

---

[11]   On March 28, 2024 we granted the Department's request to take judicial notice of the Department's March 8, 2024 section 387 petition and the juvenile court's detention minute order dated March 11, 2024.  On our own motion, we also take judicial notice of the juvenile court's April 15, 2024 order setting a permanency planning hearing for August 22, 2024 and its April 22 order granting the guardians' section 388 petition to withdraw as legal guardians and dismissing the section 387 petition without prejudice.

15

the moving party demonstrates modification of the prior order is in the child's best interests.  (*In re Jasmon O.* (1994) 8 Cal.4th 398, 414-415*; In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*); *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122.)  A parent requesting modification of an order under section 388 has the burden of proving by a preponderance of the evidence both that there is a change in circumstances or new evidence, and that the proposed modification would be in the best interests of the child.  (*In re Jasmon O.*, at p. 415; *Stephanie M.*, at p. 317; *In re Malick T.*, at p. 1122.)

"[Section 388] petitions are to be liberally construed in favor of granting a hearing to consider the parent's request.  [Citations.]  The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310; accord, *In re R.A.* (2021) 61 Cal.App.5th 826, 836; see Cal. Rules of Court, rule 5.570(a) ["A petition for modification must be liberally construed in favor of its sufficiency."].)  '"A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' [Citation.]  'Whether [the petitioner] made a prima facie showing entitling [the petitioner] to a hearing depends on the facts alleged in [the] petition, as well as the facts established as without dispute"' by the court's records.  (*In re B.C.* (2011) 192 Cal.App.4th 129, 141; see *In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)  "[T]he court may summarily deny the motion if the petition fails to make a prima facie showing (1) of a change of circumstances or new evidence requiring a changed order, and (2) the requested change would promote the best interests of the child."  (*In re Justice P.*, at pp. 188-189; accord,

*R.A.,* at p. 836.) "'"[T]he term 'new evidence' in section 388 means material evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered."'" (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1195; accord*, In re D.B.* (2013) 217 Cal.App.4th 1080, 1093; *In re H.S.* (2010) 188 Cal.App.4th 103, 105.)

When a section 388 petition is filed after family reunification services have been terminated, as here, "the juvenile court's overriding concern is the child's best interests." (*In re Malick T., supra*, 73 Cal.App.5th at p. 1122; accord, *Stephanie M., supra*, 7 Cal.4th at p. 317.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child." (*Stephanie M.*, at p. 317; accord, *In re Malick T.*, at p. 1122; see *In re Marilyn H., supra*, 5 Cal.4th at p. 310 ["The presumption that arises after termination of reunification services is a rebuttable one.  It is presumed, at that point, that continued care is in the best interest of the child."].)

"We review the juvenile court's decision to grant or deny a section 388 petition for abuse of discretion." (*In re I.B.* (2020) 53 Cal.App.5th 133, 152; accord, *Stephanie M., supra*, 7 Cal.4th at p. 318.)  We likewise review a summary denial of a section 388 petition for abuse of discretion.  (*In re R.A., supra*, 61 Cal.App.5th at p. 837; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

17

B.    *The Juvenile Court Abused Its Discretion in Summarily Denying Mother's Section 388 Petition*

Mother contends the juvenile court abused its discretion in denying her petition without a full hearing because she made a prima facie showing of changed circumstances based on her successful completion of a drug treatment program and negative drug tests, her participation in counseling, and her regular, positive visitation with Anthony.  We agree that Mother's petition, liberally construed in favor of its sufficiency, made an adequate showing of changed circumstances, and in light of Mother's declaration and the undisputed evidence in the record, the court abused its discretion in concluding without a hearing that there were no changed circumstances and modification of the visitation order was not in Anthony's best interests.

Mother's showing of progress in addressing her substance abuse issues between January and August 2023 was robust:  As described in her declaration, Mother completed a 30-day residential drug treatment program in January 2023, followed by an outpatient program in February, and then phased group recovery programs.  She submitted to at least 12 drug tests over six months and consistently tested negative.  She regularly attended 12-step meetings, met regularly with her sponsor, and was treated by a psychiatrist and a therapist specializing in substance abuse recovery.  Mother's participation in treatment, testing, and recovery services was corroborated by Esparza's letter and Mother's 12-step program attendance sheets.  Mother's sponsor, Duck, attested at the time of the petition that Mother had established a support network to maintain sobriety in both her personal life and at home with Michael C. and Jared.

At a minimum, Mother made a prima facie showing she maintained her sobriety for six months and was committed to recovery, which would constitute a significant change in circumstances from Mother's status in September 2018 when the court terminated her reunification services, and likewise a significant change when measured from the juvenile court's last visitation order in February 2023 allowing Mother two hours of monitored visitation on Sundays. Although the juvenile court did not explain its findings in denying her petition, we infer from the record of Mother's prior substance abuse that the court found there were not sufficient changed circumstances because it was concerned Mother might relapse, as she had in the past. The record reflects that Mother struggled with substance abuse throughout Anthony's life, and at least three dependency cases were filed involving Mother's neglect of Anthony. Further, numerous appellate courts have held that a juvenile court does not abuse its discretion in finding that a short period of sobriety does not establish changed circumstances where a parent has a history of relapsing. (See, e.g., *In re N.F.* (2021) 68 Cal.App.5th 112, 121 [juvenile court did not abuse its discretion in finding mother failed to establish sufficiently changed circumstances by evidence of completion of a 90-day residential program because mother had twice completed programs and relapsed]; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [court did not abuse its discretion in finding insufficient changed circumstances where parents had "extensive histories of drug use and years of failing to reunify with their children" and their "recent efforts at rehabilitation were only three months old"]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686 [court did not abuse its discretion in finding that mother who had been sober for over a

19

year had not demonstrated changed circumstances where she "previously relapsed twice during the course of [the] case, once after more than 300 days of sobriety" and was currently still in an inpatient treatment program]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [father's seven months of sobriety since last relapse were insufficient to show changed circumstances where it took him six months during prior dependency proceeding to achieve sobriety and he maintained sobriety for eight months before relapse].)  However, in each of these cases, the juvenile court made its finding of insufficient changed circumstances after a full evidentiary hearing on the parent's section 388 petition.[12]

Here, the juvenile court denied Mother's section 388 petition without receiving any evidence or argument concerning either Mother's sobriety or her history of relapses.  Yet Mother had been outside of the court's and the Department's supervision for more than four years at the time of her petition (since the court's January 2019 termination of jurisdiction), and there was no new evidence that she was again using drugs.[13]  Therefore, to

---

[12]    We note that in *In re C.J.W., supra*, 157 Cal.App.4th 1075, the juvenile court denied the parents' section 388 petition without allowing them to testify, but the Court of Appeal found this was not a summary denial because the juvenile court "did receive written evidence and heard substantial argument from counsel for the parties." (*Id.* at pp. 1080-1081.)

[13]    As discussed, in May 2022 the guardians suspected Mother was using drugs based on Mother's inconsistent visitation, and in June 2022 the professional monitor raised concerns about Mother's appearance.  However, there was no other evidence that she was, in fact, again using drugs in 2023.  Moreover, Mother

20

the extent the juvenile court found insufficient changed circumstances as to Mother's sobriety, the court should have at least considered Mother's evidence before denying the petition.

We recognize that Mother also had the burden to establish that the orders she requested—including a home-of-parent order, six months of reunification services, and/or unmonitored daytime or overnight visitation—were in Anthony's best interests. (See *In re J.C.* (2014) 226 Cal.App.4th 503, 525 [the parent "must also show that the proposed change would promote the best interests of the child"]; Cal. Rules of Court, rule 5.570(d)(1) [juvenile court may summarily deny section 388 petition that fails to show a change of circumstances or new evidence that demonstrates a modification of a prior order would promote the best interests of the child].) To the extent the juvenile court determined without holding an evidentiary hearing that unmonitored visitation would not be in Anthony's best interests notwithstanding the changed circumstances in Mother's sobriety, the court abused its discretion.[14]

---

had custody of Jared since March 2019, and Michael C., who lived with Mother and Jared, had no concerns about Mother's possible drug use.

[14] We focus on Mother's request for unmonitored visitation because it would not have been an abuse of discretion for the juvenile court to have found Mother had not presented a prima facie case that, after almost four years of a legal guardianship in which Anthony was thriving, his placement with Mother would serve his interests in permanency and stability. Because we reverse based on the denial of a hearing on Mother's request for unmonitored visitation, we do not reach whether Mother also

As discussed, in February 2023 the juvenile court found Anthony was not adoptable under section 366.26, subdivisions (c)(1)(B)(i) and (ii), because Anthony expressed his ardent desire to have a relationship with Mother, and further, his bond with Mother was strong enough to establish a beneficial parental relationship.  In addition, the Department reported in August 2023 that Mother's visits had "gone well," Mother and Anthony interacted "positively and appropriately," and Anthony enjoyed the visits.  Further, crediting the evidence in Mother's section 388 petition, Anthony had an interest in spending time with his brother Jared, and Mother's ability to visit Anthony under the February 2023 order for monitored visitation was frustrated by the cost and logistical challenges of ensuring visitation monitors.[15]  Moreover, Mother's visitation was limited to monitored visits because of her history of substance abuse, for which, as discussed, Mother presented evidence of changed circumstances.

On this record, given Mother's evidence of her sobriety, the undisputed evidence of positive visitation, Anthony's desire for visitation, the impediments to visitation imposed by the

---

made a prima facie showing on her request for reinstatement of reunification services.  On remand, however, the juvenile court should address all the relief requested by Mother.

[15]    Although the Department had been providing monitors through most of 2023, upon the termination of jurisdiction on August 25, 2023, Mother was again responsible for paying for a professional monitor if the guardians would not agree to a relative as the monitor, and the record reflects the guardians were not willing to approve Leisa as the monitor.

requirement of a monitor, and the absence of any evidence that Mother's behavior required a visitation monitor, the juvenile court abused its discretion in declining to set a hearing to determine whether unmonitored visits should be allowed.

Although we reverse the juvenile court's order denying Mother's section 388 petition and direct the court to hold a full hearing on the petition, we reject Mother's request that we direct the court to grant the petition. At the hearing on Mother's section 388 petition, the court should consider Mother's evidence of changed circumstances and Anthony's best interests based on current circumstances. The post-appeal filings reflecting termination of the legal guardianship make clear that circumstances have changed significantly since Mother filed her section 388 petition in August 2023.

## DISPOSITION

The August 25, 2023 order denying Mother's section 388 petition is reversed. We remand for the juvenile court to conduct a full hearing on Mother's petition, at which time the court shall consider Mother's request and evidence in light of current circumstances.


FEUER, J.

We concur:



MARTINEZ, P. J.                    SEGAL, J.


23